IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re | § | |
| LEASE OIL ANTITRUST | § | MDL No. 1206 |
| LITIGATION | § | |
| (No. II) | § | |

**ORDER**

On this day came on to be considered the motion of the State of Texas to intervene in the above-styled multi-district litigation (D.E. 975). For the reasons set forth below, the State of Texas' motion to intervene is hereby DENIED.

## I.  Jurisdiction

The Court has jurisdiction to consider the State of Texas' motion to intervene pursuant to the Court's explicit retention of jurisdiction in the final judgments issued in this litigation (D.E. 595-601, 607). Specifically, the above-referenced final judgments all contain provisions stating as follows:

> This Court shall retain continuing jurisdiction over the Settlement Amount (including the Interim Unclaimed Fund and the Final Unclaimed Fund), the Settling Parties and the Settlement Class. This continuing jurisdiction shall include jurisdiction to order injunctive relief for the purposes of enforcing, implementing, administering, construing and interpreting the Settlement Agreement.

(Id.). As the State of Texas' motion to intervene specifically relates to unclaimed settlement funds, the Court has jurisdiction to consider the State's motion.

## II. Background

The background of this multi-district litigation is set forth in this Court's December 12, 2007 Order addressing the Class Counsel Report (D.E. 954) and the Independent Oil Producers' Agency Motion for Reconsideration (D.E. 961, 965). (Order, D.E. 967, pp. 1-11). The pertinent background with respect to this Order is set forth as follows:

Following distribution of funds from a series of settlements in the MDL-1206 litigation, a sum of money remains "unclaimed" by certain Class Members. Unclaimed settlement funds are made up of payments that were mailed but returned, payments that were mailed but were neither returned nor cashed, payments that were for less than the de minimis amount approved by the Court, and payments that were otherwise undeliverable. (D.E. 967, Order, p. 8). As of December 31, 2007, the total amount of the "Settlement Fund," which includes unclaimed settlement funds, interest, and budgeted distribution costs that were allocated but not spent, consisted of $9,626,219. (D.E. 974, Exh. A, Pulliam Aff., ¶ 8). As of December 31, 2007, $4,638,283 of this unclaimed amount was allocated to Class Members with last known addresses in the State of Texas. (Id., ¶ 4). This $4,638,283 amount represents 51,595 checks totaling $4,547,800, which were either mailed or undeliverable, and

-2-

$90,487 in de minimis amounts allocated to 212,834 Class Members with last known addresses in Texas. (Id.).[1]

The State of Texas filed the instant motion to intervene on January 11, 2008, seeking "delivery of all funds that are either presumed or deemed abandoned belonging to the members of the settlement class, whose last known address is in Texas, and attorneys' fees pursuant to the Texas Unclaimed Property Act." (Motion to Intervene, ¶ 4(a)). However, the Court already addressed the issue of the State of Texas' claim to the unclaimed settlement funds for Class Members with last known addresses in Texas. (D.E. 967, Order, pp. 26-32). The Court held, after extensive discussion, that "the disposition of unclaimed funds in a class action settlement in federal court is a procedural matter committed to the discretion of the district court under Federal Rule of Civil Procedure 23, and thus is unconstrained by state unclaimed property laws." (Id., p. 27). Accordingly, the Court held that the State of Texas was not entitled to the portion of the unclaimed settlement funds for Class Members with last known addresses in Texas. (Id., p. 32). However, "in order to allow the

---

[1] As of the Court's December 12, 2007 Order, the amount of unclaimed settlement funds allocated to Class Members with last known addresses in Texas was $4,638,286. (D.E. 967, Order, p. 10). That number has been reduced to $4,638,283, because between June 30, 2007 and December 31, 2007, one check to one of these Class Members was cashed. (Pulliam Aff., ¶ 4). That check was for a dollar amount of $3.26. (Id.). Accordingly, as of December 31, 2007, the total unclaimed dollar amount for Class Members with last known addresses in Texas was $4,638,283. (Id.).

State of Texas the opportunity to appeal this determination," the Court ordered the Settlement Administrator to set aside, "in an interest earning account, a total of $4,638,286[2] until such time as any and all appeals in this litigation involving the state of Texas have been fully resolved and the results have been reported to this Court." (Id.).[3] Per the Court's Order, the Settlement Administrator has placed $4,638,286 into a separate, interest-bearing account, apart from the rest of the Settlement Fund. (Pulliam Aff., ¶ 9; D.E. 974, Exh. B, Senzer Aff., ¶ D(ii)).[4]

With regard to its Order to the Settlement Administrator to set aside the $4,638,286 in a separate account, the Court clarifies that it makes no opinion on whether the State of Texas will be able to bring an appeal to the United States Court of Appeals for the Fifth Circuit, or whether any such appeal would be meritorious.

---

[2] As noted above, the amount of unclaimed settlement funds allocated to Class Members with last known addresses in Texas has now been reduced to $4,638,283, because a Class Member cashed a check for $3.26. (Pulliam Aff, ¶ 4).

[3] If the State of Texas appeals and does not prevail, or if the State of Texas fails to appeal, the funds that have been set aside will revert into the Final Unclaimed Fund. (Id.).

[4] As of December 31, 2007, $4,569,099 remains in the Settlement Fund, after the $4,638,286 was set aside for a possible appeal by the State of Texas, and an additional sum was set aside for another potential appeal and for possible administrative costs. (Pulliam Aff., ¶¶ 9-10). Pursuant to this Court's December 12, 2007 Order, approximately $4,000,000 of the amount in the Settlement Fund has been conditionally approved for a cy pres distribution to charity, to implement the "Neighborhood Air Toxics Modeling Project for Houston and Corpus Christi". That project is described in detail in Exh. 4 to the Class Counsel Report, D.E. 954.

The Court also clarifies that with its prior Order regarding the set-aside of the $4,638,286, the Court did not make any opinion on whether the State of Texas would have the right to intervene in the MDL 1206 proceedings. Rather, the Court only ordered the $4,638,286 to be set aside in an abundance of caution, in the event the State of Texas has some success with an appeal to the Fifth Circuit.

## III. **Discussion**

### A. **Intervention of Right**

The State of Texas seeks to intervene in the MDL 1206 litigation pursuant to Federal Rule of Civil Procedure 24(a)(2). (Motion to Intervene, p. 1). Rule 24(a)(2) addresses "intervention of right," and states as follows:

> a) Intervention of Right. On timely motion, the court must permit anyone to intervene who: ...
>
> > (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

Under Rule 24(a)(2), an applicant shall be permitted to intervene in an action when the applicant meets four conditions: (1) the application for intervention is timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated

-5-

that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit. See John Doe No. 1 v. Glickman, 256 F.3d 371, 375 (5th Cir. 2001); Heaton v. Monogram Credit Card Bank of Georgia, 297 F.3d 416, 422 (5th Cir. 2002) (same); Ford v. City of Huntsville, 242 F.3d 235, 239 (5th Cir. 2001) (same); see also Fed. R. Civ. P. 24(a)(2). If an applicant fails to meet any one of these requirements, then the applicant cannot intervene as a matter of right. See Edwards v. City of Houston, 78 F.3d 983, 999 (5th Cir. 1996).

"To determine whether a motion to intervene is timely, courts must consider the totality of the circumstances." United States v. Covington County Sch. Dist., 499 F.3d 464, 465-66 (5th Cir. 2007) (citing Jones v. Caddo Parish Sch. Bd., 735 F.2d 923, 927 (5th Cir. 1984) (en banc)). In Stallworth v. Monsanto, 558 F.2d 257, 264-66 (5th Cir. 1977), the Fifth Circuit held that the following four factors are relevant as to the timeliness of a motion to intervene:

(1) The length of time the proposed intervenor knew or should have known of its interest in the case;

(2) the extent of the prejudice that existing parties may suffer by the proposed intervenor's delay in moving to intervene;

-6-

(3) the extent of the prejudice that the would-be intervenor would suffer if intervention is denied; and

(4) any unusual circumstances that bear upon the timeliness of the application.

Id.; Save Our Springs Alliance Inc. v. Babbitt, 115 F.3d 346, 347 (5th Cir. 1997) (same); Covington County Sch. Dist., 499 F.3d at 466 (same). These factors are not dispositive, rather, timeliness should be determined based on all available circumstances. See Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc., 346 F.3d 552, 561 (5th Cir. 2003) (internal quotations and citations omitted) ("These [Stallworth] factors are not a formula for determining timeliness; instead, [timeliness] should be determined based on all the circumstances"); see also Heaton, 297 F.3d at 423 ("There are no absolute measures of timeliness; it is determined from all the circumstances.").

### B. The State of Texas' Motion to Intervene is Untimely

In order to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2), the State of Texas' motion to intervene must be timely. See Staley v. Harris County Tex., 160 Fed. Appx. 410, 413 (5th Cir. 2005) ("untimeliness alone is fatal to [applicant's] Rule 24(a)(2) intervention"). The State of Texas claims that its motion to intervene is timely, because the State "learned of the suit on January 2, 2008, and filed this Motion without delay on January 11, 2008." (Motion to Intervene, ¶ 1). This argument is unpersuasive,

as the State of Texas has been aware of its interest in this litigation *for at least almost two full years*, yet inexplicably failed to intervene until January, 2008. Because the State's motion to intervene is not timely, the State of Texas cannot intervene in this lawsuit pursuant to Rule 24(a)(2).

As noted above, timeliness is determined based on a "totality of the circumstances," with guidance from the following four Stallworth factors: (1) the length of time the proposed intervenor knew or should have known of its interest in the case; (2) the extent of prejudice existing parties may suffer by the proposed intervenor's delay in moving to intervene; (3) the extent of prejudice the proposed intervenor would suffer if intervention is denied; and (4) any unusual circumstances that bear on the timeliness of the motion to intervene. See Stallworth, 558 F.2d at 264-44; Covington County Sch. Dist., 499 F.3d at 465-66. In this case, as set forth below, all of the factors weigh against the timeliness of the State of Texas' motion to intervene.

### 1. First *Stallworth* Factor

The first Stallworth factor addresses the length of time the purported intervenor knew or should have known of its interest in this case. See Stallworth, 558 F.2d at 264-66. This factor weighs heavily against the timeliness of the State's application.

As early as March, 2006, *almost two full years* before the State of Texas supposedly "learned of the suit", the Texas Attorney

-8-

General's Office had been informed of the ongoing MDL 1206 litigation and the possibility of unclaimed settlement funds allocated to Class Members with last known addresses in Texas.[5] Specifically, at a hearing before the Court on March 31, 2006, Gretchen Sween of Susman Godfrey LLP, Lead Counsel for the Plaintiff Class, informed the Court that she "did call the [Texas] Attorney General's office" regarding the unclaimed settlement funds issue. (D.E. 950, Transcript of March 31, 2006 Hearing, 13:17-18). Ms. Sween represented that the Texas Attorney General's Office "made it clear that if there ends up being a significant amount of money, [the State of Texas] might be willing to challenge a court order that sends money anywhere other than to the States." (Id., 13:18-21). Ms. Sween indicated that "basically they [the State of Texas] want it to go to the general fund". (Id., 13:25-14:1).

The State's awareness of the unclaimed settlement funds issue came up again at a hearing before the Court on December 1, 2006, *over a year* before the State finally moved to intervene in the case. At the December 1, 2006 hearing, the Court asked Lee Godfrey of Susman Godfrey LLP "how your negotiations with the [Texas]

---

[5]The Court notes that the State of Texas may have been aware of the pending MDL 1206 litigation for an even longer period of time, but the relevant inquiry regarding the timeliness of the motion to intervene centers on when the State learned of its particular interest in the litigation. See Stallworth, 558 F.2d at 264 (stating that the relevant factor is not when the purported intervenor learned of the "pendency of the action", but rather the date "he learned of his interest in the case".).

Attorney General are going." (D.E. 949, Transcript of Dec. 1, 2006 Hearing, 4:2-3). Mr. Godfrey responded as follows: "Well, the Attorney General is receptive, but says, you know it really would – they say ultimately it probably is a call for the Comptroller. And meanwhile, they're asking me can I tell them some instances in which this has been done before." (Id., 4:4-8).

Finally, this issue came up again at a hearing before the Court on March 6, 2007, still almost *nine months* before the State finally attempted to intervene in the litigation. At that hearing, Lee Godfrey spoke to the Court regarding the proposed air quality monitoring project referenced above. With regard to the State of Texas, Mr. Godfrey stated as follows: "However, where we are with the Comptrollers Office and the Attorney General is that it will be, it would be, it is their position that for those funds that ultimately can't be distributed to class members or for disputed claims or for expenses, those funds indeed are funds that would revert to the State under the unclaimed property rules." (D.E. 948, Transcript of March 6, 2007 Hearing, 9:15-21). Mr. Godfrey stated that "it will be the position of the [Texas] Comptroller and the [Texas] AG that if we distribute or attempt to distribute that money to a charity, those unclaimed funds, it will be their position that that money has to go to the State." (Id., 9:25-10:3). Further, at the March 6, 2007 hearing, Mary Kathryn Sammons of Susman Godfrey LLP also stated as follows:

-10-

> What we've been told, though, is that the State of Texas will take the position, in the federal court, if we try and do this, try and give the money to charity, they will take the position ... that in fact the money that's allocated to Texas residents should go to Texas. ... all we're saying is that the State has indicated that it will intervene and appeal on that point.

(Id., 11:24-12:9).

In this case, the State of Texas knew of its interest in the case, specifically its claim to certain unclaimed settlement funds, *almost two years* before it moved to intervene. "The first [Stallworth] factor focuses on the time lapse between the applicant's receipt of actual or constructive knowledge of his interest in the litigation and the filing of his motion for intervention. The timeliness clock runs either from the time the applicant knew or reasonably should have known of his interest, or from the time he became aware that his interest would no longer be protected by the existing parties to the lawsuit." Edwards, 78 F.3d at 1000 (internal citations omitted). In this case, the timeliness clock began to run at least in March, 2006, when the State first learned of its interest in the suit. See id. However, despite ongoing discussions with lead counsel for the Plaintiff Class Members and repeatedly making known its position regarding the unclaimed settlement funds, the State waited until January, 2008 to attempt to intervene. Contrary to its assertion in its motion to intervene, the State did not just "learn" of the case on January 2, 2008, it learned of the suit and its interest in the

-11-

litigation much earlier, and its January, 2008 motion to intervene is not timely. See, e.g., Covington County Sch. Dist., 499 F.3d at 466 (finding a motion to intervene to be untimely, where the purported intervenor "reasonably should have known of [its] interests in the case at least months before it actually filed its motion to intervene").

### 2. **Second *Stallworth* Factor**

The second Stallworth factor looks at the extent of the prejudice existing parties may suffer by the purported intervenor's delay in moving to intervene. See Stallworth, 558 F.2d at 264-44. "As for [this] factor, 'prejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation.'" Heaton, 297 F.3d at 423 (citing Sierra Club v. Espy, 18 F.3d 1202, 1206 (5th Cir. 1994). Again, this factor weighs against the timeliness of the State of Texas' motion to intervene.

This multi-district litigation has been ongoing for almost a decade. The litigation is in its last stages, regarding the final distribution of funds. The issue of the disposition of unclaimed settlement funds has been before the parties and the Court for almost two years, and has been raised in three separate hearings in this case in 2006 and 2007. (D.E. 948, 949, 950, Hearing Transcripts). Further, the Court already addressed the issue in extensive detail, and made a ruling adverse to the State, in the

-12-

Court's December 12, 2007 Order. (D.E. 967, Order, pp. 26-32). However, after all this has already taken place, the State of Texas now seeks to file an untimely intervention regarding the unclaimed settlement funds. If the State of Texas is permitted to enter the proceedings at this late date to re-hash an issue that has been before the Court since 2006, it will prejudice the other parties by preventing the final distribution of funds, and by keeping the litigation open for the indefinite future. This will delay any appeals to the United States Court of Appeals for the Fifth Circuit, and unnecessarily prolong this multi-district litigation.[6] Accordingly, this second Stallworth factor weighs against the timeliness of the State of Texas' motion to intervene.[7]

---

[6] In particular, $378,833.88 has been set aside in a separate, interest bearing account relating to a possible appeal by Chesapeake Exploration Ltd. Partnership (hereinafter, "Chesapeake"). (Pulliam Aff., ¶ 9). Chesapeake was a "Non-Settling Defendant" that sought unsuccessfully to be re-classified as a Class Member. Chesapeake attempted to appeal the Court's determination regarding its status, but the Fifth Circuit held that Chesapeake's appeal was not ripe while this Court retained continuing jurisdiction over the Settlement Amount in this case. See McMahon Found. v. Chesapeake Exploration Ltd. P'ship, 98 Fed. Appx. 267, 271 (5th Cir. 2004); see also Final Judgments, D.E. 595-601, 607 (containing provisions retaining this Court's jurisdiction over the Settlement Amount). If the State of Texas is now permitted to intervene and prolong litigation over the unclaimed settlement funds, this will preclude Chesapeake's ability to appeal to the Fifth Circuit. Chesapeake will thus be prejudiced by the State of Texas' delay in failing to bring its motion to intervene until 2008, when such a motion could have been brought as early as 2006.

[7] The Court notes the State of Texas' unpersuasive argument that "[t]he granting of [the State's] Motion will not prejudice the parties because the issue has not been previously decided in this

-13-

### 3. Third *Stallworth* Factor

The third <u>Stallworth</u> factor addresses the extent of prejudice that the purported intervenor would suffer if intervention is denied. See <u>Stallworth</u>, 558 F.2d at 264-66. Again, this factor weighs against the timeliness of the State of Texas' motion to intervene.

In this case, the Court Ordered the Settlement Administrator to set aside $4,638,286 in a separate, interest bearing account, "until such time as any and all appeals in this litigation involving the State of Texas have been fully resolved and the results have been reported to this Court." (D.E. 967, Order, p. 32). The Settlement Administrator has already set that sum aside in a separate, interest bearing account. (Pulliam Aff., ¶ 9; Senzer Aff., ¶ D(ii)). The State of Texas will not be prejudiced by not being permitted to intervene in this case, as this Court has already rejected the State's claim to the unclaimed settlement funds (D.E. 967, Order, p. 32), and the State of Texas may now pursue an appeal to the United States Court of Appeals for the

---

case." (Motion to Intervene, ¶ 9). To the contrary, this issue has been analyzed and decided in this Court's December 12, 2007 Order (D.E. 967, pp. 26-32). In that Order, the Court specifically found "that the disposition of unclaimed funds in a class action in federal court is properly classified as procedural. Federal law governs, and therefore the disposition of the unclaimed funds is a matter within the discretion of this Court." (<u>Id.</u>, p. 32). The issue has been decided, and re-opening the matter will indeed prejudice the other parties to this litigation.

-14-

Fifth Circuit.[8] The money sought by the State of Texas has been set aside and is earning interest, it is not slated to be disbursed pending final outcome of any appeal by the State. Because the disputed funds will not be dispersed until the State has an opportunity to appeal, the State is not prejudiced by not intervening at this late stage in the proceedings.

---

[8] This Court makes no opinion as to whether the State of Texas will have standing to bring an appeal to the Fifth Circuit, or on the merits of any such appeal. The Court notes that while the general rule in the Fifth Circuit is that non-parties to a suit do not have standing to appeal, Marino v. Ortiz, 484 U.S. 301, 304 (1988), that general rule "has not been rigidly adhered to", and there are exceptions that may allow a non-party, such as the State of Texas, to appeal this Court's Order regarding the unclaimed settlement funds. Castillo v. Cameron County, Tex., 238 F.3d 339, 349 (5th Cir. 2001) ("a nonparty may be allowed to appeal if the decree affects his interests"); United States v. Holy Land Found. For Relief and Dev., 445 F.3d 771, 780 (5th Cir. 2006) (citing S.E.C. v. Forex Asset Mgmt. LLC, 242 F.3d 325, 329 (5th Cir. 2001)) ("While there is a general rule that non-parties to a suit do not have standing to appeal, we have previously stated that exceptions exist. For instance, ... if the decree affects a third party's interests, he is often allowed to appeal."); see also In re Beef Indus. Antitrust Litig., 589 F.2d 786, 788 (5th Cir. 1979) (stating that "[t]he Fifth Circuit has been lenient in hearing the appeals of non-parties"). "In order to determine if a nonparty may properly appeal, [the Fifth Circuit] has adopted a three-part test, analyzing whether [1] 'the non-parties actually participated in the proceedings below, [2] the equities weigh in favor of hearing the appeal, and [3] [whether] the non-parties have a personal stake in the outcome.'" Castillo, 238 F.3d at 349 (citing Searcy v. Philips Elecs. N. Am. Corp., 117 F.3d 154, 157 (5th Cir. 1997)); see also E.E.O.C. v. Louisiana Office of Cmty. Servs., 47 F.3d at 1442 (same). Accordingly, in this case, the State of Texas is not necessarily foreclosed from appealing this Court's Order regarding the unclaimed settlement funds. As noted above, this Court makes no determination on whether the State of Texas will have standing to pursue an appeal, or whether any such appeal would be meritorious. The Court only notes that the funds claimed by the State of Texas have been set aside in the event the State is successful in an appeal to the Fifth Circuit.

### 4. Fourth *Stallworth* Factor

The fourth *Stallworth* factor addresses any unusual circumstances that bear upon the timeliness of the motion to intervene. See *Stallworth*, 558 F.2d at 264-66. This factor also weighs against the timeliness of the State of Texas' motion.

As set forth above, this complex multi-district litigation has been ongoing for almost ten years, and it is in the very final stages of disbursement of funds. The State of Texas has known of this unclaimed settlement funds issue for almost two years, yet it waited to attempt to intervene until one month after the Court decided the issue <u>against</u> the State. The lengthiness and complexity of this litigation, coupled with the State's inexplicable delay in attempting to intervene, weigh against allowing the State of Texas to prolong the proceedings at this late date.

Further, also at issue in this case is that the proposed use of the unclaimed settlement funds is a cy pres distribution to charity. The proposed cy pres distribution would use the unclaimed settlement funds on a project that monitors the air quality in certain Texas cities. This project would be conducted through the University of Texas, by working with David Allen, who is the Gertz Regents Professor in Chemical Engineering and the Director of the Center for Energy and Environmental Resources at the University of Texas at Austin. In this case, the cy pres distribution of

-16-

unclaimed settlement funds would go to the benefit of the people of the State of Texas, via a project conducted in conjunction with a State University – the University of Texas. This factor also weighs against allowing the State to intervene at this late stage in the proceedings, to seek recovery of funds *that were already intended for the benefit of the people of the State of Texas*.[9]

In sum, the four Stallworth factors all weigh against the timeliness of the State of Texas' motion to intervene. If a motion to intervene is not timely, an applicant is not entitled to intervention of right under Federal Rule of Civil Procedure 24(a)(2). See Edwards, 78 F.3d at 999. Because the State of Texas' motion to intervene was not timely, the State's motion is hereby DENIED.[10]

---

[9] The Court notes that the disputed funds have been set aside pending the outcome of any appeal by the State of Texas to the Fifth Circuit. (D.E. 967, Order, p. 32). Because of the State's claim, the disputed funds will not be part of any cy pres distribution pending the outcome of any such appeal. (Id.).

[10] Although the State of Texas specifically moved to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2), intervention of right, the Court notes that there is also a second method to intervene, "permissive intervention" under Rule 24(b). The decision to grant a motion for permissive intervention rests in the discretion of the trial court. See Trans Chem. Ltd. v. China Nat. Mach. Imp. & Exp. Corp., 332 F.3d 815, 822 (5th Cir. 2003). However, "[t]imeliness of the intervenor's motion applies to both intervention as of right and permissive intervention." Ranger Ins. Co. v. Events, Inc., 2004 WL 2004545, *3 (E.D. La. 2004); United States v. Texas Educ. Agency (Lubbock Indep. Sch. Dist.), 138 F.R.D. 503, 511 (N.D. Tex. 1991) ("The timeliness factor is applicable to both Intervention of Right, Rule 24(a), FRCP, and Permissive Intervention"); see also Corley v. Jackson Police Dep't, 755 F.2d 1207, 1209 (5th Cir. 1985) (emphasis added) ("The

## IV. Conclusion

For the reasons set forth above, the State of Texas' motion to intervene (D.E. 975) is hereby DENIED. The State of Texas is not permitted to intervene in the above-styled multi-district litigation.

SIGNED and ENTERED this the 25th day of January, 2008.

_____
Janis Graham Jack
United States District Judge

---

threshold consideration of *any* motion to intervene is timeliness."). In this case, because the State of Texas' motion to intervene is not timely, the Court also does not permit the State to intervene under the permissive intervention standard of Rule 24(b). See id.