IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re | § | |
| LEASE OIL ANTITRUST | § | MDL No. 1206 |
| LITIGATION | § | |
| (No. II) | § | |

## ORDER

On this day came on to be considered the State of Texas' motion for reconsideration of this Court's December 12, 2007 Order in the above-styled multi-district litigation. (D.E. 977, seeking reconsideration of D.E. 967). For the reasons set forth below, the State of Texas' motion for reconsideration is hereby DENIED.

I.   **Jurisdiction**

The Court has jurisdiction to consider the State of Texas' motion for reconsideration pursuant to the Court's explicit retention of jurisdiction in the final judgments issued in this litigation (D.E. 595-601, 607). Specifically, the above-referenced final judgments all contain provisions stating as follows:

> This Court shall retain continuing jurisdiction over the Settlement Amount (including the Interim Unclaimed Fund and the Final Unclaimed Fund), the Settling Parties and the Settlement Class. This continuing jurisdiction shall include jurisdiction to order injunctive relief for the purposes of enforcing, implementing, administering, construing and interpreting the Settlement Agreement.

(Id.). As the State of Texas' motion for reconsideration specifically relates to unclaimed settlement funds, the Court has jurisdiction to consider the State's motion.

II.   **Background**

The background of this multi-district litigation is set forth in this Court's December 12, 2007 Order addressing the Class Counsel Report (D.E. 954) and the Independent Oil Producers'

1

Agency Motion for Reconsideration (D.E. 961, 965). (D.E. 967, Order, pp. 1-11). The pertinent background with respect to this Order is set forth as follows:

Following distribution of funds from a series of settlements in the MDL-1206 litigation, a sum of money remains "unclaimed" by certain Class Members. Unclaimed settlement funds are made up of payments that were mailed but returned, payments that were mailed but were neither returned nor cashed, payments that were for less than the de minimis amount approved by the Court, and payments that were otherwise undeliverable. (D.E. 967, p. 8). As of December 31, 2007, the total amount of the "Settlement Fund," which includes unclaimed settlement funds, interest, and budgeted distribution costs that were allocated but not spent, consisted of $9,626,219. (D.E. 974, Exh. A, Pulliam Aff., ¶ 8). As of December 31, 2007, $4,638,283 of this unclaimed amount was allocated to Class Members with last known addresses in the State of Texas. (Id., ¶ 4). This $4,638,283 amount represents 51,595 checks totaling $4,547,800, which were either mailed or undeliverable, and $90,487 in de minimis amounts allocated to 212,834 Class Members with last known addresses in Texas.[1] (Id.).

On January 11, 2008, the State of Texas filed a motion to intervene in MDL 1206, seeking "delivery of all funds that are either presumed or deemed abandoned belonging to the members of the settlement class, whose last known address is in Texas ... pursuant to the Texas Unclaimed Property Act." (D.E. 975, Motion to Intervene, ¶ 4(a)). On January 25, 2008, the Court found that the State's motion was untimely, and the Court accordingly DENIED the State

---

[1] As of the Court's December 12, 2007 Order, the amount of unclaimed settlement funds allocated to Class Members with last known addresses in Texas was $4,638,286. (D.E. 967, p. 10). That number has been reduced to $4,638,283, because between June 30, 2007 and December 31, 2007, a Class Member cashed a check for $3.26. (Pulliam Aff., ¶ 4). Accordingly, as of December 31, 2007, the total unclaimed dollar amount for Class Members with last known addresses in Texas was $4,638,283. (Id.).

2

of Texas' motion to intervene. (D.E. 979, pp. 17-18). Since the Court DENIED its motion to intervene, the State of Texas is not a party to the MDL 1206 proceedings. (Id.).

In its December 12, 2007 Order, the Court addressed the issue of the State of Texas' claim to the unclaimed settlement funds for Class Members with last known addresses in Texas. (D.E. 967, pp. 26-32). The Court held, after extensive discussion, that "the disposition of unclaimed funds in a class action settlement in federal court is a procedural matter committed to the discretion of the district court under Federal Rule of Civil Procedure 23, and thus is unconstrained by state unclaimed property laws." (Id., p. 27). Accordingly, the Court held that the State of Texas was not entitled to the portion of the unclaimed settlement funds for Class Members with last known addresses in Texas.[2] (Id., p. 32).[3]

---

[2] However, "in order to allow the State of Texas the opportunity to appeal this determination," the Court ordered the Settlement Administrator to set aside, "in an interest earning account, a total of $4,638,286 until such time as any and all appeals in this litigation involving the state of Texas have been fully resolved and the results have been reported to this Court." (Id.). Per the Court's Order, the Settlement Administrator has placed $4,638,286 into a separate, interest-bearing account, apart from the rest of the Settlement Fund. (Pulliam Aff., ¶ 9; D.E. 974, Exh. B, Senzer Aff., ¶ D(ii)). With regard to its order to set aside the $4,638,286, the Court has clarified that it makes no opinion on whether the State of Texas will be able to bring an appeal to the United States Court of Appeals for the Fifth Circuit, or whether any such appeal would be meritorious. (D.E. 979, pp. 4-5). With regard to its order to set the funds aside, the Court also did not make any opinion on whether the State of Texas would be permitted to intervene in the MDL 1206 proceedings (and the Court later DENIED the State's motion to intervene, D.E. 979). Rather, the Court ordered the $4,638,286 to be set aside in an abundance of caution, in the event the State of Texas has some success with an appeal to the Fifth Circuit.

[3] As of December 31, 2007, $4,569,099 remains in the Settlement Fund, after the $4,638,286 was set aside for a possible appeal by the State of Texas, and an additional sum was set aside for another potential appeal and for possible administrative costs. (Pulliam Aff., ¶¶ 9-10). Pursuant to this Court's December 12, 2007 Order, approximately $4,000,000 of the amount in the Settlement Fund has been conditionally approved for a cy pres distribution to charity,to implement the "Neighborhood Air Toxics Modeling Project for Houston and Corpus Christi". That project is described in detail in Exh. 4 to the Class Counsel Report, D.E. 954.

On January 11, 2008, the same day it filed its motion to intervene, the State of Texas filed the instant motion for reconsideration, asking the Court to amend its December 12, 2007 Order. (D.E. 977, seeking reconsideration of D.E. 976). In its motion for reconsideration, the State of Texas reiterates its claim to "all funds that are either presumed or deemed abandoned belonging to the members of the settlement class, whose last known address is in Texas ... pursuant to the Texas Unclaimed Property Act." (Motion for Reconsideration, ¶ 4(b)). Even though the State filed its motion more than ten days after entry of the Court's December 12, 2007 Order, the State claims that it brings its motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e), not Federal Rule of Civil Procedure 60. (Id., p. 1).[4]

## III.   Discussion

### A.   Standing

The State of Texas does not have standing to bring a motion for reconsideration of the Court's December 12, 2007 Order, because the State of Texas is not a party to the MDL 1206 proceedings. "For the [State of Texas] to file a Rule 59 motion, this Court would have to grant

---

[4]"If [a motion for reconsideration] is served within ten days of the rendition of judgment, the motion falls under Rule 59(e); if it is served after that time, it falls under Rule 60(b)." Ford v. Elsbury, 32 F.3d 931, 937 (5th Cir. 1994); Anglin v. Local Union 1351, 102 Fed.Appx. 367, 369 (5th Cir. 2004) (same). In this case, the State of Texas claims that its motion should be considered under Rule 59(e), because the State filed the motion within ten days of <u>learning</u> of the Court's Order. However, Rule 59(e) explicitly states that "[a] motion to alter or amend a judgment must be filed no later than 10 days after the *entry* of the judgment." Fed. R. Civ. P. 59(e) (emphasis added). There is no exception written into Rule 59(e) for when an applicant "learns of" a judgment. See id. Further, pursuant to Federal Rule of Civil Procedure 6(b), the Court may not extend the deadline for the filing of a Rule 59(e) motion. See Fed. R. Civ. P. 6(b) (the district court "may not extend the time for taking any action under Rules 50(b) and (c)(2), 52(b), 59(b), (d) and (e), and 60(b)". Accordingly, it appears that the State of Texas may not have filed a timely Rule 59(e) motion, since the State filed its motion more ethan ten days after entry of the Court's December 12, 2007 Order. However, the Court makes no opinion on the timeliness of the State's Rule 59(e) motion, as the motion must be denied on other grounds regardless of whether it was timely filed or not.

their Rule 24(a) motion" to intervene, which it did not do. (D.E. 979, Order Denying Motion to Intervene); Katz v. Berisford Int'l PLC, 2000 WL 1760965, *2 (S.D.N.Y. 2000); see also In re NASDAQ Market-Makers Antitrust Litigation, 184 F.R.D. 506, 511 (S.D.N.Y. 1999) ("Therefore, Genins, having been denied intervention, has no standing to bring a Rule 59(e) motion."); Ross v. Marshall, 426 F.3d 745, 753 (5th Cir. 2005) (noting the holding in Katz v. Berisford Int'l PLC, 2000 WL 1760965 at *2, that a non-party cannot file a Rule 59(e) motion, and finding Katz inapplicable in the case before the court because the 59(e) motion under consideration had been filed by a *party*); Simpson v. Columbus S. Power Co., 2000 WL 420679, *2 (6th Cir. 2000) (noting the district court's denial of a Rule 59(e) motion, on the grounds that a "nonparty ... did not have standing to bring a Rule 59 motion to amend the judgment."); United States v. District Council of New York City, 2007 WL 3196136, *1 (S.D.N.Y. 2007) (holding that Rule 59(e) "may be availed of only by parties to an action."); Scutieri v. Estate of Revitz, 829 F.Supp. 387, 390 (S.D. Fla. 1993) (finding that a non-party would not be able to bring a Rule 59(e) motion, since Rule 59 refers only to "parties").[5]

As noted above, this Court DENIED the State of Texas' motion to intervene in the MDL 1206 litigation. (D.E. 979, p. 18). The State of Texas, therefore, is not a party to these

---

[5]The Court does note that in Med. Billing, Inc. v. Med. Mgmt. Sciences, Inc., 169 F.R.D. 325, 327 (N.D. Ohio 1996), the Ohio district court considered that Rule 59(e) may allow a non-party "to move for alteration or amendment of judgments." However, the district court denied the 59(e) motion on other grounds, and declined to decide the issue of whether the non-party had standing to bring a 59(e) motion for reconsideration. See id. ("the Court does not accept [plaintiff's] suggestion to deny [the non-party's] motion for lack of standing."). As noted above by the several other courts that have addressed the issue, Med Billing, Inc., 169 F.R.D. at 327, goes against the weight of authority and the language of Rule 59(e) in its treatment of a non-party's standing to bring a 59(e) motion. Accordingly, like most of the courts that have addressed this issue, this Court finds that a non-party does not have standing to bring a Rule 59(e) motion for reconsideration. See, e.g., In re NASDAQ Market-Makers Antitrust Litigation, 184 F.R.D. at 511; Simpson, 2000 WL 420679 at *2.

proceedings, and does not have standing to bring a motion for reconsideration pursuant to Rule 59(e).  See In re NASDAQ Market-Makers Antitrust Litigation, 184 F.R.D. at 511.

### B. The State of Texas Could Have Made These Arguments Prior to the Entry of Judgment

Even if the State of Texas did have standing to bring a Rule 59(e) motion, the motion must be denied because the State could have, and should have, made its arguments prior to the entry of the Court's December 12, 2007 Order in this case.

#### 1. Rule 59(e) Motions

A Rule 59(e) motion is one that seeks to "alter or amend" a previous judgment entered by the Court.  Fed. R. Civ. P. 59(e).  "Reconsideration of a judgment after its entry is an *extraordinary remedy that should be used sparingly*."  Templet v. HydroChem Inc., 367 F.3d 473, 479 (5th Cir. 2004) (emphasis added).  The Fifth Circuit has held "that such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."  Id.; see also Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990) ("These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued").  Rather, Rule 59(e) "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."  Templet, 367 F.3d at 479 (citing Waltman v. Int'l Paper Co., 875 F.2d 468, 473 (5th Cir. 1989)).  A Rule 59(e) motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence" that was not available before the judgment issued.  Schiller v. Physicians Res. Group Inc., 342 F.3d 563, 567-68 (5th Cir. 2003) (citing Rosenzweig v. Azurix Corp., 332 F.3d 854, 863-64 (5th Cir. 2003)).

### 2. State Could Have Presented Its Arguments Prior to December, 2007

In its motion for reconsideration, the State of Texas argues that it is entitled to the unclaimed settlement funds allocated to Class Members with last known addresses in Texas, pursuant to the Texas Unclaimed Property Act. (Motion for Reconsideration, ¶ 4). The State of Texas could have advanced this argument long before entry of the Court's December 12, 2007 Order, holding that federal law, rather than state unclaimed property law, governs the distribution of the unclaimed settlement funds in this litigation.

As set forth below and in the Court's January 25, 2008 Order denying the State's motion to intervene, the State knew of this unclaimed funds issue and the Court's intention to distribute certain of the funds to charity *at least as early as March, 2006.* By March, 2006, almost two full years before entry of the Court's December 12, 2007 Order, the Texas Attorney General's Office had been informed of the ongoing MDL 1206 litigation and the possibility of unclaimed settlement funds allocated to Class Members with last known addresses in Texas. Specifically, at a hearing before the Court on March 31, 2006, Gretchen Sween of Susman Godfrey LLP, Lead Counsel for the Plaintiff Class, informed the Court that she "did call the [Texas] Attorney General's office" regarding the unclaimed settlement funds issue. (D.E. 950, Transcript of March 31, 2006 Hearing, 13:17-18). Ms. Sween represented that the Texas Attorney General's Office "made it clear that if there ends up being a significant amount of money, [the State of Texas] might be willing to challenge a court order that sends money anywhere other than to the States." (Id., 13:18-21). Ms. Sween indicated that "basically they [the State of Texas] want it to go to the general fund". (Id., 13:25-14:1).

The State's awareness of the unclaimed settlement funds issue came up again at a hearing before the Court on December 1, 2006, *over a year* before the entry of the Court's Order

regarding the unclaimed settlement funds. At the December 1, 2006 hearing, the Court asked Lee Godfrey of Susman Godfrey LLP "how your negotiations with the [Texas] Attorney General are going." (D.E. 949, Transcript of Dec. 1, 2006 Hearing, 4:2-3). Mr. Godfrey responded as follows: "Well, the Attorney General is receptive, but says, you know it really would – they say ultimately it probably is a call for the Comptroller. And meanwhile, they're asking me can I tell them some instances in which this has been done before." (Id., 4:4-8).

Finally, this issue came up again at a hearing before the Court on March 6, 2007, over *nine months* before the entry of the Court's December 12, 2007 Order in this case. At that hearing, Lee Godfrey spoke to the Court regarding the proposed air quality monitoring project referenced above. With regard to the State of Texas, Mr. Godfrey stated as follows: "However, where we are with the Comptrollers Office and the Attorney General is that it will be, it would be, it is their position that for those funds that ultimately can't be distributed to class members or for disputed claims or for expenses, those funds indeed are funds that would revert to the State under the unclaimed property rules." (D.E. 948, Transcript of March 6, 2007 Hearing, 9:15-21). Mr. Godfrey stated that "it will be the position of the [Texas] Comptroller and the [Texas] AG that if we distribute or attempt to distribute that money to a charity, those unclaimed funds, it will be their position that that money has to go to the State." (Id., 9:25-10:3). Further, at the March 6, 2007 hearing, Mary Kathryn Sammons of Susman Godfrey LLP also stated as follows:

> What we've been told, though, is that the State of Texas will take the position, in the federal court, if we try and do this, try and give the money to charity, they will take the position ... that in fact the money that's allocated to Texas residents should go to Texas. ... all we're saying is that the State has indicated that it will intervene and appeal on that point.

(Id., 11:24-12:9).

Accordingly, as early as March, 2006, the State was aware of the unclaimed settlement funds issue, and that the Court and parties intended to distribute at least a portion of the funds in a cy pres distribution to charity. The State of Texas, through discussions with counsel for the Lead Plaintiff Class, repeatedly made known its position that (1) under the Texas Unclaimed Property Act, the State was entitled to the unclaimed settlement funds allocated to Class Members with last known addresses in Texas; and (2) that those funds therefore could not be a part of any cy pres distribution to charity. (D.E. 948 at 9:15-21, 9:25-10:3; D.E. 949 at 4:2-8; D.E. 950 at 13:17-18, 13:25-14:1). The State of Texas could have raised its arguments in support of this position at a significantly earlier date, yet it waited until one month <u>after</u> entry of the Court's Order to advance its argument that it was entitled to the funds. As noted above, a Rule 59(e) motion "cannot be used to raise arguments which ***could, and should, have been made before the judgment issued***." <u>Simon</u>, 891 F.2d at 1159 (emphasis added). The State of Texas now tries to make its argument that it is entitled to the unclaimed settlement funds under the Texas Unclaimed Property Act. (Motion for Reconsideration, ¶ 4). However, the State could, and should, have made this argument long ago, well before entry of the Court's December 12, 2007 Order on the issue. Accordingly, the State of Texas may not advance its arguments at this late date, and the State's Rule 59(e) motion must be DENIED.

Finally, this Court's December 12, 2007 Order sets forth in extensive detail why federal law, not state unclaimed property law, governs the distribution of the unclaimed settlement funds in the MDL 1206 litigation. (D.E. 979, pp. 26-32, explaining the Court's holding "that the disposition of unclaimed funds in a class action settlement in federal court is a procedural matter committed to the discretion of the district court under Federal Rule of Civil Procedure 23, and thus is unconstrained by state unclaimed property laws."). In its motion for reconsideration, the

State of Texas does not even address the Court's reasoning and discussion regarding the distribution of the unclaimed settlement funds. (See, generally, Motion for Reconsideration, pp. 1-2). The Court refers to pp. 26-32 of its December 12, 2007 Order for the analysis of why federal, not state law, governs the distribution of the funds in this multi-district litigation. (D.E. 967, pp. 26-32). For the reasons set forth in the Court's December 12, 2007 Order, and for the reasons set forth above, the State of Texas' motion for reconsideration must be DENIED.

III.  **Conclusion**

As set forth above, the State of Texas' motion for reconsideration (D.E. 977, seeking reconsideration of D.E. 967) is hereby DENIED.

SIGNED and ORDERED this 30th day of January, 2008.

_____
Janis Graham Jack
United States District Judge