IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| In re § | |
| LEASE OIL ANTITRUST § | MDL No. 1206 |
| LITIGATION § | |
| (No. II) § | |

## ORDER

The Court hereby makes the following Order regarding the unclaimed settlement funds in the above-styled multi-district litigation, and the Court also hereby requests a detailed project proposal from Dr. David Allen, the Gertz Regents Professor in Chemical Engineering and Director of the Center for Energy and Environmental Resources at the University of Texas at Austin.

1.  **Jurisdiction**

The Court has jurisdiction to make this Order pursuant to the Court's explicit retention of jurisdiction in the final judgments issued in this litigation (D.E. 595-601, 607). Specifically, the above-referenced final judgments all contain provisions stating as follows:

> This Court shall retain continuing jurisdiction over the Settlement Amount (including the Interim Unclaimed Fund and the Final Unclaimed Fund), the Settling Parties and the Settlement Class. This continuing jurisdiction shall include jurisdiction to order injunctive relief for the purposes of enforcing, implementing, administering, construing and interpreting the Settlement Agreement.

(Id.). This Court has jurisdiction to make this Order, as it relates specifically to unclaimed settlement funds.

II.  **Background and Orders Re: Unclaimed Settlement Funds**

The background of this multi-district litigation is set forth in this Court's December 12, 2007 Order addressing the Class Counsel Report (D.E. 954) and the Independent Oil Producers' Agency Motion for Reconsideration (D.E. 961, 965). (Order, D.E. 967, pp. 1-11). The pertinent background with respect to this Order is set forth as follows:

   A.   **Amount in Settlement Fund**

At the time of funding of the settlements in this litigation, the total Settlement Amount was $232,746,963. (D.E. 954, Exh. 4, 2007 Pulliam Aff., ¶ 5). After distribution to Class Members and appropriate taxation authorities, attorneys' fees and payment for distribution and administrative expenses, $9,626,219 remained in the "Settlement Fund" as of January 11, 2008. (D.E. 974, Exh. A., 2008 Pulliam Aff., ¶ 6).[1] This Settlement Fund consists of unclaimed settlement funds, interest, and budgeted distribution costs that were allocated but not spent. (D.E. 976, Order, pp. 8-9). The above-referenced "unclaimed settlement funds" are made up of payments that were mailed but returned, payments that were mailed but were neither returned nor cashed, payments that were for less than the de minimis amount approved by the Court, and payments that were otherwise undeliverable. (Id., p. 8).

With regard to checks that were mailed but not returned or cashed, every settlement check carried a legend on its face that the check was invalid if not negotiated within 180 days. (D.E. 974, January Report, p. 4). To date, to prevent significant check re-issuance costs, Class Counsel and the Claim Administrators have not enforced the 180 day negotiation deadline. (Id.).

---

[1] As used in this Order, the term "Settlement Fund" includes all unclaimed funds, interest, and budgeted distribution costs that were not spent. The Court notes, as set forth below, that certain sums have been set aside in separate bank accounts pending potential appeals to the United States Court of Appeals for the Fifth Circuit. Those sums are still technically part of the total "Settlement Fund," although they currently reside in separate bank accounts pending the outcome of possible appeals.

2

In light of the above, the Court hereby ORDERS that such checks may no longer be cashed as of the date of entry of this Order. Although the 180-day negotiation deadline has not been enforced to date, recipients of the above-referenced checks have had more than ample time to cash them, certainly significantly more than the 180 days they were allotted on the face of the distributed checks. This check distribution process began over five years ago, with over 446,000 checks distributed in four separate rounds of distribution. (D.E. 954, August 21, 2007 Class Counsel Report). In the interest of closing the lengthy distribution and administration process in this litigation, it is reasonable for the Court to ORDER that distributed checks may no longer be cashed after the date of entry of this Order.[2]

### B. Set-Asides For Potential Appeals

In connection with possible appeals by the State of Texas and by Chesapeake Exploration Limited Partnership (hereinafter, "Chesapeake"), the Court ordered the Settlement Administrator to place certain amounts from the Settlement Fund in separate, interest bearing accounts, until such time as any appeals by these entities have been fully resolved and the results reported to this Court. (D.E. 976, Order, pp. 24-25, 32, 48-49). Specifically, in connection with a possible appeal by the State of Texas, the Court ordered the Settlement Administrator to set aside a total of $4,638,286,[3] and in connection with a possible appeal by Chesapeake, the Court ordered the

---

[2]The Court's Order regarding check cashing also applies to checks that were mailed but not returned or cashed as a part of the Apache settlement, discussed below.

[3]The potential appeal regarding the State of Texas pertains to unclaimed settlement funds allocated to Class Members with last known addresses in Texas. (D.E. 967, Order, pp. 26-32). As of the Court's December 12, 2007 Order, the amount of unclaimed settlement funds allocated to Class Members with last known addresses in Texas was $4,638,286. (Id., p. 10). That amount has been reduced to $4,638,283, because between June 30, 2007 and December 31, 2007, a Class Member cashed a check for $3.26. (2008 Pulliam Aff., ¶ 4). Accordingly, as of December 31, 2007, the total unclaimed dollar amount for Class Members with last known addresses in Texas was $4,638,283. (Id.).

Settlement Administrator to set aside a total of $378,833.88.[4] (Id.). Per the Court's Order, the Settlement Administrator has placed $4,638,286 into a separate, interest-bearing account regarding the potential appeal by the State of Texas, and has placed $378,833.88 in a separate, interest-bearing account regarding the potential appeal by Chesapeake. (2008 Pulliam Aff., ¶ 9; D.E. 974, Exh. B, Senzer Aff., ¶ D(i)-(ii)). If the State of Texas and/or Chesapeake choose not to appeal, or they appeal and do not prevail, the funds that were set aside pursuant to the Court's Order will "revert into the Final Unclaimed Fund[5] without further order of the Court." (D.E. 976, Order, pp. 25, 32).

Also of note, regarding possible administrative costs associated with the potential appeals, the Court ordered the Settlement Administrator to set aside, in a separate, interest-baring account, a total of $40,000 as a reserve for Susman Godfrey LLP's ("Susman Godfrey") "out-of-pocket costs." (D.E. 976, Order, p. 49). If there are no further appeals in connection with the MDL 1206 litigation, these reserve funds will "revert into the Final Unclaimed Fund without further order of the Court." (Id.).

The total amount of these set-asides is $5,057,119.88. The amount in the Settlement Fund not including these set-asides is $4,569,099. (2008 Pulliam Aff., ¶ 10).

---

[4]The potential Chesapeake appeal concerns the Court's denial of Chesapeake's request to be re-classified from a Non-Settling Defendant to a Class Member. (D.E. 976, Order, p. 23).

[5]The term "Final Unclaimed Fund" is a defined term in the Global Settlement Agreement. (D.E. 136, Global Settlement Agreement, ¶ 1.56). The term "Final Unclaimed Fund" refers to the account(s) in which all remaining Settlement funds are located which have not otherwise been set aside by order of the Court. The language in the Court's December 12, 2007 Order regarding "rever[sion] into the Final Unclaimed Fund" means that if the State of Texas and/or Chesapeake do not appeal or are not successful on appeal, the money that was set aside will automatically rejoin the non set-aside sums in the general Settlement Fund. As noted above, the set-asides remain part of the technical Settlement Fund, although they are currently residing in separate bank accounts. If the anticipated appeals do not occur and/or are not successful, the appropriate set-aside money will automatically be placed back into the general Settlement Fund, and be available for immediate distribution by the Court.

4

C. **Apache Settlement**

One of the seven stand-alone settlements in this MDL 1206 litigation was the "Apache Settlement." (D.E. 599, Final Judgment With Respect to Apache Settlement). Per the terms of the Apache settlement, Apache (not the Class) was responsible for paying the expenses of settlement administration. (Id., D.E. 974, January Report, p. 5). Susman Godfrey did not have any role in the administration of the Apache settlement, rather, Apache chose to separately administer its settlement. (Id.). Counsel for the class certified in connection with the Apache settlement requested Susman Godfrey to prepare a report on the status of the distribution of the Apache settlement. (Id.). Susman Godfrey complied with this request and submitted its report on January 11, 2008. (Id.). Susman Godfrey reported as follows:

The Apache settlement was administered by the Garden City Group, who also served as one of the Settlement Administrators in the general distribution overseen by Susman Godfrey. (Id.; D.E. 974, Exh. C., Senzer Apache Aff., ¶ 2). A total of $232,298.93 was distributed under the Apache settlement, and 19,631 checks were distributed. (Exh. A to Senzer Apache Aff.). 9,173 checks, totaling $218,384.05, were actually cashed. (Id.). As of December 31, 2007, the Apache Settlement Fund still contained $16,915.92 in unclaimed settlement funds. (Id.). This $16,915.92 is made up of $9,277.71 for 7,678 checks that were delivered but not cashed, and $4,637.17 for 2,780 checks that were undeliverable. (Id.).

The Court hereby ORDERS that this $16,915.92 of unclaimed funds from the Apache settlement shall be added to the $4,569,099 in the Settlement Fund described above, **leaving the non set-aside amount in the Settlement Fund at $4,586,014.92.** The Settlement Administrator

5

is hereby ORDERED to place the $16,915.92 of unclaimed funds from the Apache settlement into the Settlement Fund by Tuesday, February 19, 2008, at 3:00 p.m.[6]

Further, as noted above, the Court also ORDERS that any uncashed checks distributed as a part of the Apache settlement may not be cashed after the date of entry of this Order. As discussed above, in light of the lengthy distribution that has gone on in this litigation and in the interest of finally closing the administration process, the Court finds it is appropriate to ORDER that Apache settlement checks may not be cashed after the date of entry of this Order.

### D.      Independent Oil Producers' Agency

The claim of the Independent Oil Producers' Agency (hereinafter, "IOPA") was initially denied by the Claim Administrator. (D.E. 967, Order, p. 12). On September 21, 2007, IOPA filed a motion for reconsideration of the Claim Administrator's denial of its claim. (D.E. 961, 965). On December 12, 2007, the Court GRANTED IOPA's motion for reconsideration, and held that IOPA wa a "Settling Defendant Payee" whose claim should be paid under the provisions of the Global Settlement Agreement. (D.E. 967, Order, p. 22). The Court remanded IOPA's claim to the Settlement Administrator to effectuate payment. (Id. at pp. 22-23). Specifically, the Court ordered that the Settlement Administrator pay IOPA "the amount of IOPA's claim which the Settlement Administrator or its designee determines has been properly substantiated by IOPA" and that the Settlement Administrator "file with the Court a report indicating what was paid to IOPA, and if this amount is less than the full amount of IOPA's claim, a statement of the reason(s) the claim was not paid in full." (Id.).

---

[6] For the purposes of this Order, when the Court orders the "Settlement Administrator" to take an action, the Garden City Group, Inc., Econ One Research, Inc., and/or Susman Godfrey may take the required action, depending upon which entity is most appropriate for the task.

The report on the IOPA claim was submitted on January 11, 2008 (as a portion of the January 11, 2008 Report to the Court). (D.E. 974, January Report). The report indicated that on January 9, 2008, the Settlement Administrator paid out $1,573,580.00 to IOPA. (Id., p. 2; 2008 Pulliam Aff., ¶ 6; Senzer Aff., ¶ B). The amount paid to IOPA was the full amount of IOPA's claim under the terms of the Settlements, "as determined by the Settlement Administrators and recognized by the IOPA." (D.E. 974, January Report, p. 2).

In its motion for reconsideration of the Claim Administrator's denial of its claim, IOPA sought attorneys' fees and expenses in connection with bringing the motion. (D.E. 961, 965). In its December 12, 2007 Order, the Court ordered that within 20 days after issuance of the Settlement Administrator's report regarding payment of IOPA's claim, IOPA may file a response to the report. (D.E. 976, Order, p. 23). The Court ordered that if IOPA files a response continuing to seek attorneys' fees and expenses, IOPA must "support its request with authority and evidence in response to the Settlement Administrator's report." (Id.).

As noted above, the Settlement Administrator's report regarding payment of the IOPA claim was filed on January 11, 2008. (D.E. 974, January Report, p. 2). Accordingly, any response by IOPA would have been due by January 31, 2008, twenty days after the report was issued. (D.E. 967, Order, p. 23). IOPA did not file any response to the report by the January 31, 2008 deadline. Accordingly, the Court hereby ORDERS that the matter regarding the IOPA claim is now CLOSED.

### E. Neighborhood Air Toxics Modeling Project for Houston and Corpus Christi

In its December 12, 2007 Order, the Court conditionally approved a cy pres distribution of $4,000,000 to fund the "Neighborhood Air Toxics Modeling Project for Houston and Corpus Christi" (hereinafter, "Air Toxics Project"). (D.E. 967, Order, p. 45). The Air Toxics Project is

described in detail at Exhibit 4 to the August 21, 2007 Class Counsel Report. (D.E. 954, Exh. 4, "Proposal for Neighborhood Air Toxics Modeling Project for Houston and Corpus Christi").  In brief summary, the Air Toxics Project will "adapt [existing] regional air quality models for use at a finer scale (hundreds of meters rather than multiple kilometers) in Corpus Christi and Houston[, Texas].  The models [will] also be adapted to track individual air toxics, such as benzene and butadiene. ...  Once the models are successful in tracking historical air pollution episodes for Houston and Corpus Christi, they [will] be used on a routine basis to rapidly evaluate emission events detected by the air toxics monitoring networks in Houston and Corpus Christi." (Id.)  The proposed budget for the Air Toxics Project is $4,000,000, over the course of four years, and the project can be expanded if additional funding becomes available.  The Air Toxics Project is to be supervised up by Dr. David Allen, the Gertz Regents Professor in Chemical Engineering and Director of the Center for Energy and Environmental Resources at the University of Texas at Austin.[7]

### III. Request for Proposal from Dr. Allen

#### A. Factual Summary

Based on the facts set forth above, the TOTAL Settlement Fund in this MDL 1206 litigation consists of **$9,643,134.80**.  This sum consists of all unclaimed settlement funds (including unclaimed funds from the Apache settlement), interest, and budgeted but not spent distribution

---

[7]The Court notes that it has experience working with Dr. Allen and his University of Texas air quality team in connection with a Court Ordered Condition of Probation in United States v. Koch Petroleum Group, L.P., S.D. Tex. Cause No. 2:00-cr-325.

costs. This total amount is made up of the set-asides (total set-asides equal **$5,057,119.88**)[8] and the funds that are immediately available, consisting of **$4,586,014.92**.

### B. Request for Proposal

Based on the above calculations, the Court hereby requests that Dr. Allen and his colleagues at the Center for Energy and Environmental Resources at the University of Texas at Austin submit a detailed proposal to the Court regarding use of the $9,643,134.80 in the Settlement Fund, in a project to build on the proposal set forth in the "Neighborhood Air Toxics Modeling Project for Houston and Corpus Christi" (Exh. 4 to the August 21, 2007 Class Counsel Report, D.E. 954).[9] The proposal must be signed and include a list of designated persons responsible for the administration of the project, with corresponding contact information.[10]

The proposed project must be conducted in two stages. Stage 1 is to budget for the $4,486,014.92, plus interest, that is immediately available. This sum of $4,486,014.92 is a sum certain that can be distributed to implement the project, and it can be distributed immediately without further litigation proceedings.

---

[8] The $5,057,119.88 in total set asides consists of $4,638,286 for a potential appeal by the State of Texas, $378,833.88 for a potential appeal by Chesapeake, and $40,000 for possible related administrative costs.

[9] The Court notes that the current proposed project described in the "Neighborhood Air Toxics Modeling Project for Houston and Corpus Christi," attached as Exh. 4 to the Class Counsel Report, only budgets for a $4,000,000 distribution. As noted above, the TOTAL amount in the Settlement Fund, including the set-asides, is $9,643,134.80. This includes $5,057,119.88 in set-asides and $4,586,014.92 that is available immediately. Accordingly, the Court requests an amended proposal that accounts for the $4,586,014.92 to be budgeted for Stage 1 of the project, and the set-asides of $5,057,119.88 to be budgeted for a potential Stage 2 of the project (with the Stage 2 proposal accounting for the uncertainty regarding the set-aside funds).

[10] As an example of a detailed project proposal, the Court references Exh. A to Docket Entry No. 427 in <u>United States v. Koch Petroleum Group, L.P.</u>, S.D. Tex. Cause No. 2:00-cr-325.

Stage 2 of the project must be more flexible, and Stage 2 is to budget for the set-asides of $5,057,119.88, plus interest. As noted above, this sum has been set aside pending potential appeals by Chesapeake and the State of Texas. Accordingly, the project proposal must account for the fact that in the event the State of Texas and/or Chesapeake prevail on appeal, all or a portion of the set-aside funds may not become available for distribution. The project proposal must also account for the uncertain nature of when the set-aside funds may become available, since the date of any distribution will depend on the appeals process in the United States Court of Appeals for the Fifth Circuit.[11]

The Court hereby requests that Dr. Allen submit the detailed project proposal by Tuesday, February 19, 2008, at 3:00 p.m.

IV. **Conclusion**

For the reasons set forth above, the Court hereby ORDERS as follows:

1. All checks mailed out as a part of the MDL 1206 distribution process, including checks distributed as a part of the Apache settlement, may no longer be cashed as of the date of entry of this Order.

2. By 3:00 p.m. on Tuesday, February 19, 2008, the Settlement Administrator is ORDERED to add the $16,915.92 of unclaimed funds from the Apache settlement to the main Settlement Fund in this case. This will bring the total in the Settlement Fund, not including set-asides, to $4,586,014.92.

3. The matter regarding IOPA's claim in the MDL 1206 litigation is now CLOSED.

---

[11] If the State of Texas and or Chesapeake choose not to appeal and/or they are unsuccessful on appeal, the appropriate set-aside funds will automatically revert into the main Settlement Fund from the separate bank accounts where the funds are currently being held. At that point, the Court will issue an order directing the funds to be distributed to Stage 2 of the proposed project.

4. The Court hereby REQUESTS a detailed, signed proposal from Dr. David Allen and his colleagues at the University of Texas, budgeting for the total amount of $9,643,134.80 in the Settlement Fund. The proposed project is to be conducted in two stages, with Stage 1 budgeted for the immediately available sum of $4,586,014.92 (plus interest), and the possible Stage 2 budgeted for the set-asides of $5,057,119.88 (plus interest), accounting for the uncertainty surrounding the set-aside funds. The Court requests that Dr. Allen submit this proposal to the Court by Tuesday, February 19, 2008, at 3:00 p.m.

5. The Clerk of Court is hereby directed to provide a copy of this Order to Dr. David Allen at the University of Texas at Austin.

SIGNED and ORDERED this 1st day of February, 2008.

_____
Janis Graham Jack
United States District Judge